UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **JULIAN RODRIGUEZ,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 1:16-CV-00250-NCC |
| **NANCY A. BERRYHILL,**[1] **Acting Commissioner of Social Security** | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Julian Rodriguez ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 15) and Defendant has filed a brief in support of the Answer (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and Social Security Income ("SSI") on September 20, 2013, alleging an onset date of August 8, 2012 (Tr. 142-54). Plaintiff was initially denied on January 22, 2014, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") on February 21, 2014 (Tr. 87-93). After the hearing, by decision dated October 9, 2015,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the ALJ found Plaintiff not disabled through June 30, 2014, his date last insured, but disabled as of May 1, 2015 (Tr. 14-26). Therefore, the ALJ issued a partially favorable decision, granting Plaintiff SSI benefits (*Id.*). On September 23, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ established that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2014 (Tr. 16). The ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 8, 2012, the alleged onset date (*Id.*). The ALJ found that Plaintiff has the severe impairments of obesity, alcoholic liver disease, lumbar degenerative disc disease, and hypertension since the alleged onset date (Tr. 17). The ALJ further found that as of May 1, 2015, Plaintiff also had the severe impairments of Bell's palsy/stroke, diabetes, and diabetic neuropathy (*Id.*). However, the ALJ determined that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).

After considering the entire record, the ALJ determined Plaintiff's residual function capacity ("RFC") for two time periods. Prior to May 1, 2015, the ALJ determined Plaintiff to have the RFC to perform light work with the following limitations (*Id.*). Plaintiff could never climb ladders, ropes, or scaffolds (*Id.*). He could occasionally climb ramps and stairs, balance stoop, kneel, crouch, and crawl (*Id.*). He could not have any concentrated exposure to excessive vibration (*Id.*). He could not work at unprotected heights or around moving/mechanical parts or other such hazards (*Id.*). He could also not have any concentrated exposure to excessive heat or cold or pulmonary irritants (*Id.* at 19). Beginning on May 1, 2015, the ALJ found Plaintiff to

2

have the RFC to perform sedentary work with the following limitations (Tr. 22). He can never climb ladders, ropes, or scaffolds (*Id.*). He can occasionally climb ramps and stairs (*Id.*). He must use a hand-held assistive device for ambulation (*Id.*). He can occasionally balance and kneel (*Id.*). He can never stoop, crouch, or crawl (*Id.*). He cannot have any concentrated exposure to excessive vibration (*Id.*). He cannot work at unprotected heights or around moving/mechanical parts or other such hazards (*Id.*). He cannot have any concentrated exposure to excessive heat or cold or pulmonary irritants (*Id.*). The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 24). Prior to May 1, 2015, the ALJ found that there were jobs that existed in significant numbers in the national economy that he could perform, including cleaner and merchandise marker (Tr. 24-25). The ALJ concluded that Plaintiff was not disabled prior to May 1, 2015, but became disabled on that date and has continued to be disabled through the date of the decision (Tr. 25). Thus, the ALJ determined that based on the application for DIB, Plaintiff was not disabled through June 30, 2014, the date last insured, and based on the application for SSI, Plaintiff has been disabled since May 1, 2015 (Tr. 26). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20

C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v.*

*Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

5

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues the ALJ's determination that prior to May 1, 2015 he had the RFC to perform light work is not supported by substantial evidence (Doc. 15 at 8, 10). Second, Plaintiff asserts the ALJ erred by failing to obtain a medical opinion to assess the onset date (*Id.* at 12). For the following reasons, the court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Use of a Medical Expert to Determine Onset

The Court will first address Plaintiff's argument that the ALJ erred by failing to obtain a medical opinion to assess Plaintiff's onset date (*Id.* at 12). There are guidelines for determining the onset date of a claimant's disability. *Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997); Social Security Ruling 83-20, 1983 WL 31249 (1983) (hereinafter "SSR 83-20"). When determining the onset date for a non-traumatic injury or progressive impairment, the ALJ should consider the applicant's allegations, the applicant's work history, and the medical and other evidence concerning the applicant's conditions. SSR 83-20. The onset date must be based on the facts and must be consistent with the medical evidence in the record. *Id.*

For slowly progressive impairments, it is sometimes impossible to determine the exact date on which an impairment became disabling solely from the medical evidence. *Id.* This is especially true when the alleged onset date and the date last insured are in the distant past and when there are not adequate medical records from the relevant time period. *Id.* When the medical evidence is ambiguous as to the onset date, the ALJ must infer an onset date. *Westbrook v. Astrue*, No. 4:06 CV 997 DDN, 2007 WL 5110314, at *9 (E.D. Mo. Aug. 29, 2017); SSR 83-20. The ALJ's inference depends on the facts of a particular case, but must have legitimate medical basis. *Grebenick*, 121 F.3d at 1200; SSR 83-20. Importantly, SSR 83-20 states the ALJ "should call on the services of a medical advisor when onset must be inferred" to provide a medical basis for an onset date. SSR 83-20. However, when the medical evidence from the relevant time period is unambiguous as to the onset date, the ALJ need not obtain a medical advisor's opinion. *Karlix v. Barnhart*, 457 F.3d 742 (8th Cir. 2006).

Before October 2016, some courts found the language of SSR 83-20 to require the ALJ to obtain a medical advisor's opinion when medical evidence is ambiguous as to an onset date. *E.g.*, *Fischer v. Colvin*, 831 F.3d. 31, 38 (1st Cir. 2016); *Grebenick*, 121 F.3d at 1201 ("If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.'"); *Westbrook*, 2007 WL 5110314, at *30. Other courts interpreted the use of the word "should" in SSR 83-20 (rather than "must" or "shall") as imposing no strict requirement on the ALJ. *E.g.*, *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir 2008). To clarify the requirements of SSR 83-20, the Commissioner issued an Emergency Message, effective October 17, 2016. Clarification of Social Security Ruling 83-20, *EM-16036*, available at https://secure.ssa.gov/apps10/reference.nsf/links/10172016104408AM (hereinafter

7

"EM-16036"). The Emergency Message unequivocally states that SSR 83-20 does not require the ALJ to obtain a medical advisor's opinion when onset must be inferred. *Id.* Instead, "the decision to call on the services of a medical expert when onset must be inferred is always at the ALJ's discretion." *Id.* The Commissioner's reasonable interpretation of SSR 83-20 is entitled to deference. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) ("We defer heavily to the findings and conclusions of the SSA.").

As such, the court need not decide whether the medical evidence is ambiguous in order to address Plaintiff's argument. SSR 83-20 requires only that the inferred onset date "have a legitimate medical basis." SSR 83-20. To that end, SSR 83-20 suggests the ALJ call upon a medical advisor in some cases to provide that legitimate medical basis. *Id.* The ALJ retains considerable discretion in determining whether an onset date is supported by medical evidence. *Id.*; *EM-16036*. To the extent Plaintiff asserts the ALJ *must* call upon a medical advisor to infer an onset date, the court rejects this argument and instead finds it is within the ALJ's discretion to choose not to elicit the testimony of a medical advisor.

The critical question here is not the exact onset date of Plaintiff's disability, but rather whether the onset date is before Plaintiff's date last insured, June 30, 2014. *Grebenick*, 121 F.3d at 1201. The objective medical evidence does not support the conclusion that Plaintiff was disabled before his date last insured. CT scans from the period were consistently unremarkable (*See* 268, 275, 281, 476). Lumbar x-rays from November 2012 revealed only mild spondylosis[2] and degenerative changes at L3-5 (Tr. 387). Pulmonary function testing from January 2014 also yielded normal results (Tr. 360-62). Physicians repeatedly noted during physical exams prior to May 2015 normal strength, reflexes, gait, and range of motion; negative straight-leg raising; and

---

[2] Stiffening or fixation of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature. Stedmans Medical Dictionary 840410, 43650.

intact sensation (Tr. 310, 353-58).  Health care professionals also found Plaintiff to have full or normal range of motion (Tr. 259, 272).  Plaintiff also denied impaired mobility and was found to ambulate without assistance (Tr. 271, 273).  Cognitively, Plaintiff also tested well in the areas of intelligence, concentration, attentiveness, and memory during the period (Tr. 305-06, 354, 465).  Additionally, Plaintiff was found on many occasions to be alert, coherent, to be oriented to person, place and time, to have normal affect, insight, and concentration (Tr. 259-60, 272, 288, 308, 310).

Contrary to Plaintiff's assertion, the Commissioner properly developed the medical record.  During this period, the Commissioner authorized two consultative examinations.  First, in June 2012, Plaintiff saw Dr. Price Gholson, Psy.D. ("Dr. Gholson") for a psychological exam (Tr. 301-06).  As the ALJ noted, Plaintiff reported to Dr. Gholson some worry but denied any symptoms of depression, anxiety, or psychosis (Tr. 302).  Indeed, Dr. Gholson noted Plaintiff to have issues with anxiety, financial problems and alcohol (*Id.*).  Dr. Gholson observed that Plaintiff appeared somewhat anxious but had otherwise average verbal behavior, attention and concentration and normal intellectual functions, in all areas (Tr. 305-06).  Second, in November 2013, Dr. Barry Burchett, M.D. performed a physical exam of Plaintiff (Tr. 353-358).  Dr. Burchett found that Plaintiff ambulated with a normal gait, which was not unsteady, lurching, or unpredictable (Tr. 354).  Dr. Burchett also noted that Plaintiff appeared stable at station and comfortable in the supine and sitting positions (*Id.*).  Upon examination of Plaintiff's spine, Dr. Burchett found no tenderness and no evidence of paravertebral muscle spasm (Tr. 355).  Plaintiff's straight leg raise test was negative in both the sitting and supine positions and Plaintiff was able to stand on one leg at a time without difficulty (*Id.*).  Dr. Burchett also did not find any hip joint tenderness, redness, warmth, swelling, or crepitus (*Id.*).

9

Therefore, the medical evidence in the record unambiguously supports the inference that Plaintiff was not disabled prior to the date last insured, and thus a medical advisor is unnecessary under any reasonable interpretation of SSR 83-20. Accordingly, the court finds the ALJ did not err by declining to seek a medical opinion regarding Plaintiff's onset date.

**B. RFC Determination**

Plaintiff next argues there are several flaws with the ALJ's RFC determination for the period prior to May 1, 2015 such that it is not supported by substantial evidence (Tr. 9). The Court will address Plaintiff's specific arguments throughout this section.

"RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96–8p, 1996 WL 374184 at *2. RFC is "the most a claimant can do despite his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ultimate burden of establishing the RFC is on the claimant. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016). The ALJ's RFC assessment must be based on "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a). In evaluating the ALJ's RFC assessment, "we consider all of the evidence that was before the ALJ, but we do not re-weigh the evidence, and we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). RFC is a medical question, and an ALJ's assessment must be based on some medical evidence, but an ALJ is not limited to considering medical evidence only. *Cox*, 495 F.3d at 619. The question before the court is whether substantial evidence supports the ALJ's RFC determination, not

whether the record supports a different, more limited RFC. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).

After consideration of the record as a whole, the ALJ determined that prior to May 1, 2015, Plaintiff had the RFC to perform light work with the following limitations (Tr. 18). Plaintiff could never climb ladders, ropes, or scaffolds (*Id.*). He could occasionally climb ramps and stairs, balance stoop, kneel, crouch, and crawl (*Id.*). He could not have any concentrated exposure to excessive vibration (*Id.*). He could not work at unprotected heights or around moving/mechanical parts or other such hazards (*Id.*). He could also not have any concentrated exposure to excessive heat or cold or pulmonary irritants (*Id.* at 19).

In determining Plaintiff's RFC, the ALJ first addressed the objective medical evidence (Tr. 19-21). While Plaintiff asserts that the ALJ failed to review these records or somehow misconstrued them, upon review of the ALJ decision, the Court finds that not to be the case. As addressed in more detail above, the ALJ fully and thoroughly reviewed the objective medical evidence from the time period.

In addition to her review of the medical evidence, the ALJ also appropriately assessed Plaintiff's credibility. First, The ALJ noted that Plaintiff did not seek treatment on a regular basis during this time (Tr. 21). Specifically, the ALJ indicated that Plaintiff had "less than a handful of regular visits to a provider in 2013 and 2014" and was "not on medications on a regular basis" (*Id.*). Relatedly, the ALJ also noted Plaintiff's noncompliance with treatment (Tr. 19). Indeed, Plaintiff failed to regularly take his medication and one provider recommended counseling, but Plaintiff did not go or participate in counseling during this period (Tr. 318-19, 487).

Plaintiff simultaneously asserts both that these statements misconstrue the record and that Plaintiff's lack of medical treatment and non-compliance is due to his inability to pay. As addressed in more detail above, the ALJ properly reviewed the objective medical record from this time period. Further, although an ALJ may not reject a plaintiff's subjective complaints solely for lack of objective medical evidence, she may consider the lack of treatment in her determination of the alleged severity. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

As to Plaintiff's assertion that his limited treatment history was due to his inability to pay, during his testimony Plaintiff indicated that he did not have health insurance until May 2015 and that money has been a "big obstacle" in obtaining medical treatment (Tr. 43, 45). Although an inability to pay may justify a claimant's failure to seek medical care, a claimant must present evidence that his failure to seek treatment was due to the expense. *See, e.g. Goff,* 421 F.3d at 790 (the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment for financial reasons); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (ALJ appropriately discounted claimant's argument he could not afford medical care absent evidence he sought and was denied low-cost or free care). In this case, as noted by Defendant, Plaintiff never indicated that he ever sought and was denied low-cost treatment. The record also reflects that despite physician recommendation otherwise, Plaintiff continued to smoke a package of cigarettes per day (Tr. 310, 312, 423, 503-04, 507, 516). *See Riggins*, 177 F.3d at 693 (8th Cir. 1999) (noting the lack of evidence that the claimant did not forego smoking in an effort to afford medication); *Johnston v. Colvin*, No. 4:13-CV-0493, 2015 WL 224661, at *6 (W.D. Ark. Jan. 15, 2015) (finding no indication that plaintiff was denied he medication due to her inability to pay when she purchased cigarettes).

Second, the ALJ noted that Plaintiff's testimony and self-reports were inconsistent with the record (Tr. 21). Specifically, while Plaintiff reported to medical professionals and stated during his hearing that he had quit drinking alcohol, his records indicate that not to be the case (Tr. 43, 291, 310, 312). Plaintiff's use of alcohol is noted throughout his medical records. As early as May 2012, Plaintiff "admit[ted] to drinking large amounts of alcohol and reports some days he will drink 24 beers throughout the course of the day" (Tr. 286). These instances of drinking alcohol continue through this period. For example, in March 2015, during an emergency department visit, Plaintiff reported drinking beer every few days for the last thirty-five years and that his last drink was approximately twelve hours prior to his visit (Tr. 487).

Third, again contrary to Plaintiff's assertion, the ALJ considered Plaintiff's activities of daily living, noting Plaintiff only has mild limitation in the areas of daily living, social functioning, and concentration, persistence and pace (Tr. 17). Specifically, the ALJ considered Plaintiff's self-reported limitations from the time period, including his Function Report-Adult dated September 27, 2013 (Tr. 17, 198-205). On this form, as noted by the ALJ, Plaintiff reported no physical problems with personal care and that he could prepare simple meals, mow with a riding mower, and shop for groceries (Tr. 17, 200-01). Plaintiff also indicated that he spent time with a friend and did not have any problems getting along with others (Tr. 17, 202, 204). Plaintiff further reported that he did not have any problems maintaining attention, following instructions, or remembering to take his medication (Tr. 17, 202-03). *See Ponders v. Colvin*, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church,

13

and visits her family"). The ALJ explicitly and properly incorporated those subjective complaints she found supported by the objective evidence in determining Plaintiff's RFC (Tr. 21).

In formulating Plaintiff's RFC, The ALJ also considered the medical opinion evidence of record during this time. Specifically, the ALJ gave significant weight to the opinion of Dr. James W. Morgan, Ph.D. ("Dr. Morgan"), the State agency mental health expert (Tr. 22, 67-68). Dr. Morgan completed a case analysis on January 21, 2014 for each of Plaintiff's two applications (Tr. 67-68, 78-79). In his analysis, Dr. Morgan determined that Plaintiff's "current mental condition is considered non-severe" (Tr. 68, 79). In doing so, Dr. Morgan noted that records generally indicated that the Plaintiff was alert and oriented, with normal mood and affect, normal insight, normal concentration, as well as appropriate appearance, orientation and thinking (Tr. 68, 79). The ALJ found Dr. Morgan's opinion consistent with Plaintiff's lack of mental health complaint before his alleged onset date as well as his sporadic complaints of, and treatment for, such symptoms since his onset date (Tr. 22). She further found the opinion consistent with Plaintiff's reported daily activates and functioning which indicates that most of his problems during that time stemmed from physical impairments rather than mental impairments (Tr. 22). Dr. Morgan is a highly qualified expert who offered an opinion consistent with the record as a whole. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2012) (State agency psychologist's opinion supported the ALJ's finding that claimant could work despite his mental impairments); *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding the ALJ did not err in considering State agency psychologist's opinion along

with the medical evidence as a whole). The ALJ additionally reviewed the June 2012 opinion of Dr. Gholson, giving it "some weight" (Tr. 22). Specifically, the ALJ found Dr. Gholson's to be consistent with Plaintiff's lack of reported mental health symptoms or abnormal clinical findings (Tr. 22). As Dr. Gholson's assessment of Plaintiff's physical function, the ALJ explicitly found this portion of the opinion to be outside the scope of his specialty (Tr. 22).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 15th day of March, 2018.

 /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE